1

2

3          IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF PUERTO RICO

4

5   MUNICIPALITY OF SAN SEBASTIAN,

6   Plaintiff

7   v.                                          CIVIL 14-1136 (FAB)

8   COMMONWEALTH OF PUERTO RICO,

9   Defendant

10

11

12          MAGISTRATE JUDGE REPORT AND RECOMMENDATION

13                  I. BACKGROUND AND ARGUMENT

14      The plaintiff, the Municipality of San Sebastián, filed a complaint on February

15  19, 2014 (Docket No.1), followed by an amended complaint on May 18, 2014

16  (Docket No. 9) against the Commonwealth of Puerto Rico, its governor Alejandro

17
    García Padilla, the Department of Labor and its Secretary Vance Thomas alleging
18
19  violations of the First and Fourteenth Amendments of the United States

20  Constitution. The action is brought under 42 U.S.C. § 1983, which provides the

21
22  basis for a civil action for deprivation of rights secured by the Constitution and

23  laws.

24      According to plaintiff, Law 52 of August 9, 1991, P.R. Laws Ann. tit. 29, §

25
26  21, provides a fund to combat unemployment in Puerto Rico. (Docket No. 1, pp.

27  3-4) under which for the last ten years the Department of Labor had disbursed a

28  total of $300,000 annually to the Municipality of San Sebastián to attend its

CIVIL 14-1136 (FAB)                    2

17.9% of unemployment.  Since the current administration of Governor García

Padilla came into office, this amount has been significantly reduced to only

$69,981 for the fiscal year of 2013-2014, while the Municipality of Rincón received

a total of $176,998 in funds, although it has a lower unemployment rate (15.7%)

and a lower population.  Plaintiff argues that the reason behind the discrepancy

is the fact that the mayor for the Municipality of Rincón is from the same political

party as the current administration, the Popular Democratic Party (PPD); while the

Municipality of San Sebastián's mayor belongs to the opposing party, the New

Progressive Party (PNP). (Docket No. 1, Data Table pp. 4-7).

Plaintiff states that the defendants' actions have no relation to the purposes

of Law 52, and that they were made under color of state law in violation of 42

U.S.C. § 1983.  Arguing political discrimination (Docket No. 1, pp. 9-11), plaintiff

is basing its claim under the Due Process and Equal Protection Clauses of both the

United States and the Puerto Rico Constitution, and a claim under the First

Amendment of the United States Constitution. (Docket No. 1, pp. 11-12)

Plaintiff is seeking a determination from the Court acknowledging that it has

been politically discriminated against, an order prohibiting the defendants to do

so in the future and a permanent injunction compelling defendants to provide the

Municipality of San Sebastián the same amount in funds it has received over the

past ten years, equal to $300,000. (Docket No. 1, pp. 11-12)

CIVIL 14-1136 (FAB)                                        3

Under Fed. R. Civ. P.12(b)(1), on April 28, 2014 (Docket No. 5) and then again on June 6, 2014 (Docket No. 11)[1] the defendants presented a motion to dismiss, based on a lack of standing from the plaintiff to bring forth a cause of action under 42 U.S.C. § 1983, since the statute was not designed to allow political sub-divisions of a state to seek redress in the federal court for allegations of discriminatory practices committed by the State. (Docket No. 5, pp. 7-13).

On July 7, 2014 (Docket No. 15), plaintiff filed a Response to Motion to Dismiss stating that the defendants did not challenge any factual jurisdictional allegations, but rather the legal validity of the allegations in regards to Municipal standing. In response, plaintiff details the autonomous powers conferred to them by the state, citing local law P.R. Laws Ann. tit. 21, § 4003, granting them "independent capacity, separate from the central government" (Docket 15, pp. 2-3). They claim federal courts have allowed Municipalities to make claims against the state based on substantive and procedural due process violations, as well as in regards to governmental discrimination (Docket No. 15, pp. 4-5). On July 17, 2014 (Docket No. 18) the defense filed a Reply to Response claiming that plaintiff failed to address the specific jurisdictional provision at the core of the complaint and relied on local state law that has no relevance in a federal district court (Docket No. 18, pp. 1-2). Basing its arguments on federal principles, the defense

---

[1] Following plaintiff's filing of amended complaint.

CIVIL 14-1136 (FAB)                                4

notes that the correct redress for the plaintiff's claims would be a mandamus in a local court and not a procedure before federal courts (Docket No. 18, pp. 2-5).

For the reasons set forth below, I recommend that the motion to dismiss filed by defendants be granted.

## II.  STANDARD OF REVIEW

"A defendant may move to dismiss an action against him for lack of federal subject-matter jurisdiction or for failure to state a claim upon which relief can be granted." Benítez-Navarro v. González Aponte, 660 F. Supp. 2d 185, 188 (D.P.R. 2009), citing Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. 12 (b)(6).  In Collazo-Rosado v. University of Puerto Rico, 775 F. Supp. 2d 376, 380 (D.P.R. 2011), "[w]hen considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based 'plausibility' standard established by [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and [ Ashcroft v.] Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009)."  The court must accept all of the complaint's factual allegations as true and find that the complaint states a plausible claim for relief.   Collazo-Rosado v. University of Puerto Rico, 775 F. Supp. 2d at 380.   "A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) is subject to similar standard of review as a motion brought pursuant to Rule 12(b)(6)." Boada v. Autoridad de Carreteras y Transportación, 690 F. Supp.2d 382, 384 (D.P.R. 2010) (citing Negrón-Gaztambide v. Hernández-

CIVIL 14-1136 (FAB)                    5

Torres, 35 F.3d 25, 27 (1st Cir. 1994). 'When a district court considers a Rule

12(b)(1) motion, it must credit the plaintiff's well-pled allegations and draw all

reasonable inferences in the plaintiff's favor.' Merlonghi v. U.S., 620 F.3d 50, 54

(1st Circ. 2010) (citing Hosp. Bella Vista, 254 F.3d at 363)." Federal Deposit Ins.

Corp. v. Estrada-Rivera, 813 F. Supp.2d 265, 267 (D. P. R. 2011).

       When faced with a motion to dismiss for lack of subject matter jurisdiction,

the plaintiff has the burden to demonstrate such jurisdiction exists and that it is

not insubstantial or implausible or "devoid of merit as not to involve a federal

controversy". Rivera-Carrión v. U.S. 634 F. Supp.2d 217, 2009 (D. P. R. 2009),

citing Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666, 94 S.

Ct. 772 (1979).

III.  ANALYSIS

       Plaintiff is basing its claim on a violation under 42 U.S.C. § which provides

that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983

CIVIL 14-1136 (FAB)                              6

The statute,[2] as first intended by Congress, was a means through which the federal government, through its courts, could intervene on behalf of people suffering from their local states' disregard of their constitutional rights.[3]  ". . . § 1983 does not create independent substantive rights but, rather, supplies a vehicle by which a plaintiff may sue government actors acting under color of state authority who have deprived him or her of a constitutional or statutory right." Milinelli-Freytes v. University of Puerto Rico 727 F. Supp.2d 60, 64 (D.P.R. 2010); see also Gonzaga University v. Doe 536 U.S. 273, 285, 122 S. Ct. 2268, 2276 (2002)).[4]  The Municipality's apparent view is that it has standing because its constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution have been violated by persons acting under color of state law, thus activating 42 U.S.C. § 1983.

---

[2]This statute is part of the Civil Rights Act of 1871, created after the Civil War, as a method to ensure state compliance with the protections the federal government had extended to all citizens with the inclusion of the Thirteenth and Fourteenth Amendment into the United States Constitution. See Steinglass, Steven H.. Section 1983 Litigation in State Courts § 2:2 (2012).  By enacting the Civil Rights Act, and its statute 42 U.S.C. § 1983, Congress intended to force states to actively protect the constitutional rights of their citizens and to make them accountable for failing to provide equal protection under the law, as demanded by the Fourteenth Amendment. See Rotell, Gloria Jean, Paying the Price: It's Time to Hold Municipalities Liable for Punitive Damages under 42 U.S.C. § 1983 10 J. L. & Pol'y 189, 194-95 (2001).
[3] Steinglass, supra.
[4]". . .§ 1983 merely provides a mechanism for enforcing individual rights "secured"elsewhere... '[O]ne cannot go into court and claim a 'violation of § 1983'- for 1983 by itself does not protect anyone against anything.'" Gonzaga University v. Doe, 536 U.S. at 285, 122 S.Ct. at 2276, citing Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 617, 99 S. Ct. 1905 (1979)

CIVIL 14-1136 (FAB)                    7

In <u>De la Mata v. Puerto Rico Highway and Transp. Authority</u> 920 F. Supp.2d 219, 231 (D.P.R. 2012), citing <u>Pagán v. Calderón</u>, 448 F.3d. 16, 26-27 (1st Cir. 2006), the court found that "[s]tanding is a jurisdictional principle based on both 'constitutional requirements and prudential concerns,' requiring courts to ask 'whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts.'"   The seminal question is whether the Municipality is entitled to the remedy it seeks in this court. "A party has constitutional standing when it has suffered an 'injury in fact' that is 'causally connected to the challenged conduct' and is 'capable of being remedied through suit.' <u>Fideicomiso de la Tierra del Caño Martín Peña v. Fortuño</u>, 604 F.3d 7, 16 (1st Cir. 2010) (citing <u>Pagán v. Calderón</u>, 448 F.3d 16, 27 (1st Cir.2006)) (citing <u>Luján v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992)). 'The burden of stating facts sufficient to support standing rests with the party seeking to assert federal jurisdiction." <u>Sutliffe v. Epping Sch. Dist</u>., 584 F.3d 314, 325 (1st Cir. 2009) (quoting <u>Sea Shore Corp. v. Sullivan</u>, 158 F. 3d 51, 54 (1st Cir. 1998))," cited in <u>Blades v. Morgalo</u> 743 F. Supp. 2d 85, 91 (D. P. R. 2009).

The Municipality may allege an injury in fact caused to it by the actions of the Commonwealth of Puerto Rico and its officials, if it falls under the scope of the word person or citizen in terms of those who could make a claim against violations under color of state law.

CIVIL 14-1136 (FAB)                              8

     In general, as the defense notes, a political subdivision of a state may not bring a constitutional claim against its creating state. (Docket No. 11).  In <u>City of New Rochelle v. Town of Mamaroneck</u>, 111 F. Supp. 2d 353, 368 (S. D. N. Y. 2000), citing the case of <u>City of Safety Harbor v. Birchfield</u>, 529 F.2d. 1251 (5th Cir. 1976) which relied on <u>Monroe v. Pape</u>, 365 U.S. 167, 81 S. Ct. 473 (1961) the court related that "a municipality is not a 'person for purposes of being sued under §1983, and on the fact that Congress' purpose in passing §1983 was to create a federal remedy for private parties, not government bodies." <u>City of New Rochelle v. Town of Mamaroneck</u>, 111 F. Supp. 2d at 368.  The Fifth Circuit in <u>City of Safety Harbor v. Birchfield</u>, 529 F.2d 1251, 1254-55, the Seventh Circuit in <u>Rockford Bd. Of Educ., Sch. Dist. 205 v. Illinois State Bd. Of Ed.</u> 150 F.3d. 686, 688 (7th Cir. 1998), and the Eleventh Circuit in <u>Randolph City v. Alabama Power Co.,</u> 784 F.2d 1067, 1072 (11th Cir. 1986) have held that municipalities are not "persons" who may seek relief under § 1983.  Even in cases where a municipality's ability to sue as a person under 42 U.S.C. §1983 have been recognized, such as in <u>South Macomb Disposal Authority v. Washington Tp</u>. 790 F.2d 500 (6th Cir. 1986), the prevailing thought is that municipal entities do not have the power to make claims on violations of privileges and immunities under the Equal Protection or Due Process Clauses of the Fourteenth Amendment of the United States Constitution.

CIVIL 14-1136 (FAB)                              9

   While the court in South Macomb, *supra* does recognize the municipality's standing as a person, it states that "the nature of the relationship between a public corporation and its creating state has led the Court to conclude that a municipal corporation cannot invoke the protection of the Fourteenth Amendment against its own state"[5], citing City of Newark v. New Jersey, 262 U.S. 192, 196, 43 S. Ct. 539, 540, (1923).

   Plaintiff relies on the decision in Santiago Collazo v. Franqui Acosta, 721 F. Supp. 385 (D.P.R. 1989), as a precedent for recognizing a municipality's standing to bring about a cause of action under 42 U.S.C. § 1983 against a parent state. In their Response to the Defendants' motion to dismiss (Docket 15) they cite: "[d]iscrimination on the basis of political affiliation of the municipal administration, within the zone of interest" protected by the first amendment, is alleged as the cause of injury, thus making it "fairly" traceable to the challenged action." Based on the Supreme Court's decision in Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978), the court in Santiago, *supra* decided that if Congress found municipalities to be persons capable of being sued as defendants under §1983, then it must follow that they are also persons capable of suing under 42 U.S.C. §1983. This interpretation can be overreaching since the

---

[5] The Court in South Macomb, *supra*, grants the municipality standing as plaintiff because it was claiming rights as property owner, not substantial rights granted to persons under the United States Constitution, such as due process and equal protection.

CIVIL 14-1136 (FAB)                    10

Supreme Court in <u>Monell</u>, *supra*, did not overrule precedents that denied the municipalities recognition as persons; it merely acknowledged the possibility that a person's harm might have been caused by the municipality as a whole. A municipality is capable of providing redress for violations it and its actors make, but unless it is also capable of claiming specific harms caused to it by a person acting under state color, the definition of person cannot be extended to include standing as plaintiff.

In effect, the Municipality of San Sebastián has not specified how the reduction of funds has adversely affected it.  Plaintiff states in passing that this has affected its ability to provide goods and services to its citizens (Dockets 1 and 9), but it has not given any details as to how or why. If allegations were found to be true, those affected would be the citizens themselves, not the Municipality. Plaintiff would then not be staking a claim on its own behalf, but rather on behalf of its citizens. Title 42 U.S.C. § 1983 when first written, was intended to provide persons suffering a violation at the hands of another acting under state color and not by political subdivisions in a representative capacity.[6]

The plaintiff also claims that both Puerto Rico's legislature in  P.R. Laws Ann. tit. 21, § 4001 et. seq. and its Supreme Court have recognized "the maximum

---

[6] Ironically, this is the Court's basis for denying standing to the New Progressive Party of Vieques in <u>Santiago Collazo</u>, *supra*. Since the party could not make allegations on how it had been injured, nor which of its members had suffered any actual or threatened harm, its standing as plaintiff was denied.

CIVIL 14-1136 (FAB)                     11

degree possible of autonomy" to municipalities for "fiscal and administrative public policy practices", viewing them as individual judicial entities, and not as creatures of the state. (Docket No. 15, pp. 2-3). They would then have standing before the federal courts in a claim against the parent state, since the power conveyed to them grant them an identity equal to a person allowed to request a redress of grievances under 42 U.S.C. § 1983 as intended by Congress.   In Hess v. Port Authority Trans-Hudson Corp. 513 U.S. 30, 47, 115 S. Ct. 30 (1994) the Supreme Court of the United States recognized that "ultimate control of every state-created entity resides with the State, for the State may destroy or reshape any unit it creates."   While a state may be entitled to grant complete autonomy to its entities, this does not grant the sub-divisions absolute independence from their creator.

In City of Hugo v. Nichols, 656 F.3d. 1251, 1255 (10th Cir. 2011), citing Williams v. Mayor & City Council of Baltimore, 289 U.S. 36, 40, 53 S. Ct. 431 (1931) the court stated that "a political subdivision lacks standing to bring in federal court a Fourteenth Amendment equal protection challenge to its parent state's actions." See also Branson School Dist. RE-82 v. Romer, 161 F.3d 619, (10th Cir. 1998). The court also stated that "we have not found... a single case where a court of appeals or the Supreme Court has expressly allowed to proceed

CIVIL 14-1136 (FAB)                    12

a claim by a municipality against its parent state premised on a substantive provision of the Constitution." City of Hugo v. Nichols, 656 F.3d. at 1257.

CONCLUSION

The Municipality of San Sebastián is not a person empowered to seek redress under 42 U.S.C. § 1983. In view of the above, I recommend that the defendant's motion to dismiss be GRANTED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155, 106 S. Ct. 466 (1985); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v.

CIVIL 14-1136 (FAB)                          13

Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376,

378-79 (1st Cir. 1982.[7]

   At San Juan, Puerto Rico, this 26th day of August, 2014.


                                       S/JUSTO ARENAS
                                United States Magistrate Judge

---

   [7]Marielia Isla Torres, a third-year student at University of Puerto Rico
School of Law, provided substantial assistance in researching and preparing this
report and recommendation.