IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MUNICIPALITY OF SAN SEBASTIAN,

**Plaintiff,**

**v.**

COMMONWEALTH OF PUERTO RICO, *et al.*,

**Defendants.**

Civil No. 14-1136 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is the defendants' motion to dismiss the Municipality of San Sebastian's amended complaint for lack of standing, (Docket No. 11), which the Municipality opposes, (Docket No. 15). The matter was referred to Magistrate Judge Justo Arenas, (Docket No. 19), who issued a Report and Recommendation recommending that the motion be granted, (Docket No. 21). The Municipality objects to the magistrate judge's recommendation. (Docket No. 23.) For the reasons that follow, the Court adopts the magistrate judge's Report and Recommendation in part and rejects it in part. The defendants' motion to dismiss, (Docket No. 11), is **GRANTED IN PART AND DENIED IN PART.**

### BACKGROUND

Plaintiff, the Municipality of San Sebastian (the "Municipality"), brought this action against the Commonwealth of Puerto Rico, Governor Alejandro Garcia-Padilla ("Governor Garcia")

in his official capacity, and Secretary of Labor Vance Thomas ("Secretary Thomas") in his official capacity (collectively, "defendants"), alleging political discrimination in the distribution of funds used to combat unemployment. (Docket Nos. 1, 9.) The amended complaint, brought pursuant to 42 U.S.C. § 1983, includes claims for violations of the First and Fourteenth Amendments of the United States Constitution as well as pendent claims arising under the Puerto Rico Constitution. (Docket No. 9 at § IV.)

According to the Municipality, the Commonwealth created the Employment Opportunities Development Fund, or Law 52 of August 9, 1991 ("Law 52"), to combat unemployment in Puerto Rico. Docket No. 9 at ¶ 9; see P.R. Laws Ann. tit. 29, § 711c (creating fund to be administered by the Department of Labor and Human Resources); see also Gomez v. Rivera Rodriguez, 344 F.3d 103, 107 (1st Cir. 2003) ("Law 52 [is] a vehicle through which the Commonwealth subsidize[s] locally managed programs to ameliorate unemployment."). The Secretary of Labor disburses these funds "in a manner that promotes jobs," allotting greater amounts "to those municipalities with the highest unemployment." (Docket No. 9 at ¶ 9.)

Each year, for the past ten years, the Municipality of San Sebastian has received an average of $300,000 in Law 52 funds to help reduce its unemployment rate, which is approximately 17.9% of

its 42,430 citizens.  (Docket No. 9 at ¶ 9.)  For the 2013-14 fiscal year ("FY 2013-14"), under Governor Garcia's administration, however, the Municipality of San Sebastian received only $70,000. Id. at ¶ 10.  The Municipality alleges that the Department of Labor, through Secretary Thomas, assigned less funds to San Sebastian because its mayor is a member of the New Progressive Party ("NPP") - an opposing political party to that of Governor Garcia, who is a member of the Popular Democratic Party ("PDP"). Id.  According to the Municipality, NPP-led municipalities like San Sebastian received lesser Law 52 allotments than PDP-led municipalities, even where the latter had lower unemployment levels and smaller populations.  Id.  As an example, the Municipality points to Rincon, a PDP-led municipality that received $176,998.13 in FY 2013-14 despite having a lower unemployment rate (15.7% versus 17.9%) and fewer citizens (15,200 versus 42,430), Rincon received over $100,000 more than San Sebastian in Law 52 funds. See id.  The amended complaint thus alleges that the Commonwealth, Governor Garcia, and Secretary Thomas discriminated politically against the Municipality of San Sebastian.  Id. at ¶ 11.  Among other things, the Municipality claims that "[t]his discrimination has negatively affected [its] ability to provide goods and services to its citizens."  Id. at ¶ 19.

"As frequently happens with such disputes in Puerto Rico, the matter was brought to federal court."  Torres Rivera v. Calderon

Serra, 412 F.3d 205, 209 (1st Cir. 2005); accord Sanchez-Lopez v.
Fuentes-Pujols, 375 F.3d 121, 126 (1st Cir. 2004) ("With each
change in administration - at both the commonwealth and municipal
levels - the federal district courts in Puerto Rico are flooded
with hundreds of political discrimination cases.").   On
February 19, 2014, the Municipality filed a complaint, commencing
this action.   (Docket No. 1.)   The Municipality amended its
complaint on May 18, 2014.   (Docket No. 9.)

The amended complaint alleges that the defendants' actions are
"politically motivated" and "have no relation to the purposes of
Law 52," and that they "were made under color of state law," in
violation of 42 U.S.C. § 1983.   (Docket No. 9 at ¶ 11.)   The
Municipality bases its political discrimination claim on the due
process and equal protection clauses of both the United States and
Puerto Rico constitutions as well as the First Amendment of the
United States Constitution.   Id. at § IV.   The amended complaint
seeks the following remedies:   (1) a determination from the Court
acknowledging that the defendants have politically discriminated
against the Municipality; (2) a permanent injunction prohibiting
the defendants from doing so again in the future; (3) an order
compelling the defendants to provide the Municipality each year
with the same amount of annual Law 52 funds that it received in
previous years ($300,000); (4) reasonable attorneys fees pursuant

to 42 U.S.C. § 1988; and (5) other equitable relief that the Court may deem proper.  Id. at ¶¶ 29-33.

On June 6, 2014, the defendants filed a motion to dismiss the Municipality's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Docket No. 11.)  The defendants' motion argues that the Municipality lacks standing to bring a cause of action under section 1983 because "[section 1983] was not designed to allow political sub-divisions of the state - including Puerto Rican municipalities - [to] seek[] redress in federal court for alleged discriminatory actions effectuated by their state." Id. at p. 3.  The defendants reason that, according to Supreme Court jurisprudence, "[section] 1983 was intended to help citizens seek federal court intervention from what amounts to illegal actions performed by state or municipal government agents under color of law - not for local governments themselves to instigate federal causes of action against the state or state entities." Id.  In sum, the defendants argue that the Municipality is not a proper section 1983 plaintiff:  although section 1983 allows political subdivisions *to be sued* in a section 1983 suit, it does not permit political subdivisions *to sue* under the statute.  See id. at pp. 3, 7-14.  This position, the defendants contend, is consistent with the holdings of several federal courts in other circuits.  Id. at pp. 3, 9-11.

On July 7, 2014, the Municipality filed its opposition to the defendants' motion to dismiss.  (Docket No. 15.)  According to the Municipality, the defendants' motion raises two distinct questions: (1) whether the Municipality has standing; and, if it does, (2) whether the Municipality's allegations, if proven true, entitle it to a remedy.  Id. at ¶ 8.  Regarding the first question, the Municipality argues that it has standing pursuant to Santiago-Collazo v. Franqui-Acosta, 721 F. Supp. 385 (D.P.R. 1989) (Pieras, J.), a case involving similar allegations.  (Docket No. 15 at ¶ 12.)  Regarding the second question, the Municipality essentially avers that its amended complaint asserts facts that, if taken as true, show that the defendants deprived the Municipality of property without due process of law and that defendants discriminated politically against the Municipality.  See id. at § IV.

## REPORT AND RECOMMENDATION

On July 22, 2014, the Court referred the defendants' motion to dismiss to Magistrate Judge Justo Arenas for a report and recommendation.  (Docket No. 19.)  On August 26, 2014, Judge Arenas recommended that the defendants' motion be granted.  (Docket No. 21.)  The magistrate judge determined that "the Municipality may allege an injury in fact caused to it by the [defendants]," a prerequisite to standing, only if the Municipality is a "person . . . in terms of those who could make a [section 1983] claim

against violations under color of state law." Id. at p. 7.  Upon reviewing the applicable case law, the magistrate judge found more persuasive the holding of other federal courts that a municipality is not a proper section 1983 plaintiff, eschewing the Municipality's reliance on Santiago.  Id. at pp. 8-10.  The magistrate judge also found that the Municipality had not specified how it was adversely affected by the reduction of funds.  Id. at p. 10.  The magistrate judge concluded that dismissal was warranted because the Municipality is not empowered to seek redress pursuant to section 1983.  Id. at p. 12.

On September 9, 2014, the Municipality objected to the magistrate judge's report and recommendation.  (Docket No. 23.) The Municipality's objection to the magistrate judge's report and recommendation largely rehashes the arguments made in its opposition to the defendants' motion to dismiss.  Compare Docket No. 15 at ¶¶ 8-12, with Docket No. 23 at ¶¶ 8-11.  Namely, the Municipality raises an objection as to the applicability of Santiago.  See Docket No. 23 at ¶ 11.

After making an independent examination of the record and reviewing the governing jurisprudence, the Court agrees with the Municipality that the issue of standing is distinct from the issue of section 1983 personhood.  See Docket No. 15 at ¶ 8.  The Court also agrees with the Municipality that Santiago governs the defendants' motion.  See id. at ¶ 12.  Accordingly, the Court

declines to follow the magistrate judge's analysis.  As discussed below, the Court adopts in part the magistrate judge's recommendation for dismissal, (Docket No. 23), albeit on different footing, and rejects it in part.

**STANDARDS OF REVIEW**

### *28 U.S.C. § 636(b)(1)*

A district court may refer a dispositive motion to a magistrate judge for a report and recommendation.  28 U.S.C. § 636(b)(1)(B); <u>see also</u> Fed. R. Civ. P. 72(b); Loc. Civ. R. 72(b). A party adversely affected may file written objections within fourteen days of being served with the report and recommendation. <u>See</u> Fed. R. Civ. P. 72(b)(2); Loc. Civ. R. 72(d).  A party that timely objects is entitled to a *de novo* determination of those portions of the report or recommendation to which specific objection is made.  <u>United States v. Mercado-Canizares</u>, 887 F. Supp. 2d 379, 382 (D.P.R. 2012) (Besosa, J.).  In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part," the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

### *Rule 12(b)(1) Motion to Dismiss*

Rule 12(b)(1) provides that a defendant may move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion to dismiss for lack of standing is properly understood as a challenge to the reviewing court's subject-matter

jurisdiction.  See United Seniors Ass'n., Inc. v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007).  When considering a Rule 12(b)(1) motion, a court takes as true the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.  Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).[1]

As courts of limited jurisdiction, federal courts narrowly construe jurisdictional grants.  Padilla-Manqual v. Pavia Hosp., 640 F. Supp. 2d 128, 133 (D.P.R. 2009) (Besosa, J.).  "The existence of subject-matter jurisdiction 'is never presumed.'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)).  Rather, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (internal quotation marks omitted).

## ANALYSIS

In support of their motion to dismiss for lack of subject-matter jurisdiction, the defendants argue that the Municipality "lacks standing to bring forth a cause of action under [section] 1983 since it is a municipality and [section 1983] was not designed to allow political sub-divisions of the state . . . [to] seek[]

_____

[1] The analytical lens through which a court reviews a Rule 12(b)(1) motion is, thus, nearly identical to that employed on a Rule 12(b)(6) motion. See Arroyo v. FDIC, 961 F. Supp. 2d 386, 390 & n.5 (D.P.R. 2013) (Besosa, J.).

redress in federal court for alleged discriminatory actions effectuated by their state." (Docket No. 11 at p. 3.) The defendants' motion, however, conflates the concept of standing with that of a cause of action: "*standing* is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art[icle] III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction," whereas "*cause of action* is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court." See Davis v. Passman, 442 U.S. 228, 239 n.18 (1979). The former inquiry, a matter of "constitutional standing," is jurisdictional and "goes to the power of the court." See Vander Luitgaren v. Sun Life Assur. Co. of Canada, 765 F.3d 59, 62 (1st Cir. 2014). The latter inquiry, often called "statutory standing," is not jurisdictional and "is part and parcel of the merits of a particular claim." Id. at 63.

To the extent the defendants' motion questions whether a municipality is a "citizen" or "other person" for purposes of section 1983, the defendants raise an argument for dismissal apart from the issue of standing. See Santiago, 721 F. Supp. at 388, 392-93 (analyzing issue of standing prior to deciding whether the municipality was entitled to bring section 1983 suit); see also City of New Rochelle v. Town of Mamaroneck, 111 F. Supp. 2d 353,

368 (S.D.N.Y. 2000) (same); <u>S. Macomb Disposal Auth. v. Washington Twp.</u>, 790 F.2d 500, 502 n.7 (6th Cir. 1986) ("Whether a plaintiff is a 'person' within the meaning of section 1983 is a separate question from whether that plaintiff has standing to raise the claims alleged in its complaint.").  The determination of whether this plaintiff falls within the class of plaintiffs that Congress has authorized to sue pursuant to section 1983 is distinct from the issue of whether the plaintiff has presented the kind of case or controversy that the Constitution allows federal courts to hear. <u>See</u> <u>Steel Co. v. Citizens for a Better Env't.</u>, 523 U.S. 83, 97 n.2 (1998) ("[T]he Article III requirement of remediable injury in fact . . .[,] except with regard to entirely frivolous claims[,] has nothing to do with the text of the statute relied upon.").

Accordingly, the Court will first address the threshold issue of standing and then turn to the issue of whether the Municipality is a proper section 1983 plaintiff.

### *Constitutional Standing*

The necessity to establish standing is rooted in the case or controversy requirement of the Constitution.  <u>See</u> U.S. Const. art. III, § 2.  Article III restricts a federal court's jurisdiction to actual cases and controversies.  <u>Id.</u>  An actual "case or controversy" exists when "the party seeking to invoke the court's jurisdiction (normally, the plaintiff) has a 'personal stake in the outcome' of the claim asserted." <u>Pagan v. Calderon</u>, 448 F.3d 16,

27 (1st Cir. 2006) (quoting <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1962)).   To satisfy the personal stake requirement, "[the] plaintiff must establish each part of a familiar triad:  injury, causation, and redressability." <u>Katz v. Pershing, LLC</u>, 672 F.3d 64, 71 (1st Cir. 2012).

The first element of Article III standing is "injury in fact." An "injury in fact" is one that is "concrete and particularized, on the one hand, and actual or imminent (as opposed to conjectural or hypothetical), on the other hand." <u>Pagan</u>, 448 F.3d at 27 (citing <u>Defenders of Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).   The second element is "causation" or "traceability," which requires that the injury is fairly traceable to the challenged conduct. <u>See</u> <u>Katz</u>, 672 F.3d at 77.  The plaintiff must adequately allege that "the asserted injury is causally connected to the challenged conduct." <u>Pagan</u>, 448 F.3d at 27.  In other words, the opposing party must be the source of the harm. <u>Katz</u>, 672 F.3d at 71.  The final element is "redressability."  The plaintiff must show "that a favorable resolution of her claim would likely redress the professed injury." <u>Id.</u> at 72.

In addition to these Article III prerequisites, prudential concerns ordinarily require a plaintiff to show: (1) that her claim is premised on her own legal rights (as opposed to those of a third party); (2) that her claim is not merely a generalized grievance; and (3) that her claim falls within the zone of interests protected

by the law invoked.  Pagan, 448 F.3d at 27.  "These prudential
considerations, though important, are not as inexorable as their
Article III counterparts."  Id.

Although their motion includes the above principles, (Docket
No. 11 at pp. 6-7), the defendants do not substantively raise any
arguments as to the Municipality's standing, devoting their
attention instead to a discussion of the purpose and scope of
section 1983.  The Municipality argues that it has standing
pursuant to Santiago Collazo v. Franqui Acosta, 721 F. Supp. 385
(D.P.R. 1989), a case in which municipal standing was found based
on similar allegations.  See Docket No. 15 at ¶ 12; see also Docket
No. 23 at ¶ 11.  The Court agrees with the Municipality that this
case is sufficiently analogous to Santiago such that it governs the
standing analysis.

The Santiago plaintiffs - the Municipality of Vieques, its
mayor (in both her personal and official capacities), and several
citizens - brought a section 1983 action against various officials
of the Commonwealth of Puerto Rico alleging that several municipal
agencies had given preference in the assignment of Housing and
Community Development Act ("HDCA") funds to members of their own
political party and, in doing so, had discriminated against
plaintiffs, members of the opposing party.  See 721 F. Supp.
at 387.  Specifically, the complaint alleged that plaintiff
Vieques, a municipality with an NPP administration, had received

less HDCA money than other comparable PDP-administered
municipalities. <u>Id.</u> The defendants moved to dismiss on several
grounds, including that the Municipality lacked standing. <u>Id.</u> The
district court disagreed and held that the plaintiff municipality
had standing to bring the action:

> [The] alleged economic loss clearly constitutes a
> "threatened or actual injury." "These palpable economic
> injuries have long been recognized as sufficient to lay
> the basis for standing." <u>Sierra Club v. Morton</u>, 405 U.S.
> 727, 733 (1972). Discrimination on the basis of the
> political affiliation of the municipal administration,
> within the "zone of interests" protected by the [F]irst
> [A]mendment, is alleged as the cause of the injury, thus
> making it "fairly" traceable to the challenged action.
> This Court could enjoin future discrimination, should it
> be proper, which would provide plaintiff a remedy.
> Moreover, the municipality requests a money judgment
> against defendants in their personal capacities for the
> past harm caused by their alleged actions. For this,
> standing is clear. Therefore, the municipality . . . has
> standing to litigate its claims.

<u>Santiago</u>, 721 F. Supp. at 388-89.

The Court finds that the <u>Santiago</u> reasoning to apply squarely
here, where the almost exact allegations have been brought forth.[2]
Here, an NPP-controlled municipality is also suing a central
government run by the PDP, alleging that its "ability to provide
goods and services to its citizens" is being purposely undermined
and affected due to the political affiliation of its mayor. <u>See</u>
Docket No. 9 at ¶ 13. The Municipality states an injury: the

---

[2] Addressing the same issue in <u>Municipality of San Juan v. Calderon</u>, No.
CIV. 04-1727 (JP), 2005 WL 1641388, at *3 (D.P.R. July 8, 2005) (Pieras,
J.), this Court applied <u>Santiago</u>, finding the case had not been overruled
and was, therefore, still good law.

deprivation of over $200,000 from its usual Law 52 yearly award.
Id. at ¶ 9.  "This alleged economic loss clearly constitutes a
'threatened or actual injury.'"  See Santiago, 721 F. Supp. at 388.
The Municipality alleges that the significant decrease in its award
occurred only after Governor Garcia's PDP administration came to
power and provides as an example that Rincon, a PDP-led
municipality, received $100,000 more in FY 2013-14 despite having
a smaller employment rate and fewer citizens than San Sebastian,
(Docket No. 9 at ¶ 10), establishing a causal connection between
the loss of funds and discrimination on the basis of the political
affiliation of the Municipality's administration.  In other words,
the alleged cause of the injury (political discrimination) is
"fairly traceable" to the challenged conduct (deprivation of Law 52
funds).  See Santiago, 721 F. Supp. at 388-89.  Finally, the
Municipality seeks, inter alia, a permanent injunction preventing
future political discrimination in the allocation of Law 52 funds.
(Docket No. 9 at ¶ 31.)  The Municipality thus satisfies the
redressability element, as "[the] Court could enjoin future
discrimination, should it be proper, which would provide plaintiff
a remedy."  See Santiago, 721 F. Supp. at 389.

    Accordingly, the Municipality has standing to litigate its
claims.

### *Statutory Standing*

Although framed as a motion to dismiss for lack of standing, the defendants' motion in substance argues that the Municipality has no cause of action pursuant to section 1983.  See Docket No. 11 at pp. 7-14.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, *any citizen of the United States or other person within the jurisdiction thereof* to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).  The defendants argue that the Municipality is not a "citizen of the United States or other person within the jurisdiction thereof" for the purposes of instituting a section 1983 action.  See, e.g., Docket No. 11 at p. 13 ("[T]he Municipality does not have a cognizable [section] 1983 claim since it cannot be a party plaintiff in such actions.").  While acknowledging that this Court in Santiago held that a municipality is an "other person" within section 1983 and may bring suit under that statute, the defendants argue that Santiago "has not been followed by any other district court and various circuit and district courts have expressly rejected [its reasoning]."  See Docket No. 11 at 9.

In 1961, the Supreme Court held that municipalities are not "persons" liable within the ambit of section 1983.  Monroe v. Pape,

365 U.S. 167, 187-91 (1961).  Monroe did not address the issue, however, of whether municipalities are "persons" for purposes of bringing suit, but the Fifth Circuit Court of Appeals held that they are not in City of Safety Harbor v. Birchfield, 529 F.2d 1251 (5th Cir. 1976).  Two years later, however, the Supreme Court overruled Monroe, holding that municipalities are "persons" for purposes of being sued in a section 1983 action.  Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 689-90 (1978).

Since Monell, the courts of appeals have been divided as to whether a municipality is a proper section 1983 plaintiff.  On one hand, the Eleventh Circuit held that municipalities cannot bring section 1983 suit, following the Fifth Circuit's reasoning. Randolph Cnty. v. Alabama Power Co., 784 F.2d 1067, 1072 (11th Cir. 1986), opinion modified on denial of reh'g, 798 F.2d 425 (11th Cir. 1986).  Without elaborating on the issue, the Seventh Circuit reached the same conclusion in dictum.  Rockford Bd. of Educ., Sch. Dist. No. 205 v. Ill. State Bd. of Educ., 150 F.3d 686, 688 (7th Cir. 1998).  On the other hand, the Sixth Circuit held that in light of Monell, "it would be a strained analysis to hold, as a matter of statutory construction, that a municipal corporation was a 'person' within one clause of section 1983, but not a 'person' within another clause of the same statute." S. Macomb, 790 F.2d at 503.  The Tenth Circuit subsequently adopted the Sixth Circuit's

approach. <u>Rural Water Dist. No. 1, Ellsworth Cnty., Kansas v. City of Wilson, Kansas</u>, 243 F.3d 1263, 1274 (10th Cir. 2001).

In <u>Santiago</u>, this Court found the Sixth Circuit Court of Appeals' reasoning to be the most persuasive and held that the plaintiff municipality was an "other person" within section 1983. 721 F. Supp. at 392-93. In doing so, the Court explicitly rejected the Fifth Circuit's approach in <u>City of Safety Harbor</u> because its opinion was rendered prior to <u>Monell</u>. <u>Id.</u> at 392. Although the defendants take issue with its reasoning, <u>Santiago</u> has not been overturned; in fact, neither the First Circuit Court of Appeals nor the Supreme Court has spoken on the issue. Thus, while the defendants are correct that a number of circuit and district courts have taken a position contrary to <u>Santiago</u>, (Docket No. 11 at 9), the Court does not find the jurisprudential landscape to be so one-sided as to render the <u>Santiago</u> holding an outlier. The defendants articulate no determinative change in the case law that warrants a different holding; the mere fact that some courts outside of this jurisdiction have found that municipalities are not "persons" who may seek section 1983 relief is not enough.

In harmony with <u>Santiago</u>, the Court holds that the Municipality of San Sebastian is an "other person" within section 1983 and is entitled to bring suit pursuant to that statute.

**_The Municipality's Right to Sue the State_**

The resolution of the issue of whether the Municipality is an "other person," however, does not end the Court's analysis.  The defendants cite several cases to the effect that, in general, municipalities cannot sue their parent states.  (Docket No. 11 at pp. 11-13.)  While the defendants are correct that this is often the case, "it is neither an exception to [section] 1983, to standing doctrines, nor a general principle in itself" that warrants this outcome, "but rather it is the effect of provisions of substantive law."  Santiago, 721 F. Supp. at 393.  To recover pursuant to section 1983, a party must suffer "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  As such, if the Municipality does not have such a protected right, it cannot recover.  See Santiago, 721 F. Supp. at 393 (citing S. Macomb, 790 F.2d at 506).

The Municipality alleges political discrimination in violation of the due process and equal protection clauses of the Fourteenth Amendment as well as the First Amendment of the United States Constitution.  (Docket No. 9 at § IV.A-C.)  A state, however, "is not bound by substantive fourteenth amendment limitations (due process and equal protection) when dealing with its municipalities."  Santiago, 721 F. Supp. at 393 (citing City of Trenton v. New Jersey, 262 U.S. 182, 188 (1923)); accord S. Macomb, 790 F.2d at 505 ("[A] municipal corporation, in its own right,

receives no protection from the Equal Protection or Due Process Clauses vis-à-vis its creating state."). Accordingly, the Municipality's claims for violations of the due process and equal protection clauses of the Fourteenth Amendment cannot lie. The Court thus dismisses the first two causes of action. (Docket No. 9 at § IV.A-B.)

Nevertheless, political subdivisions can sue their states for constitutional violations when the right asserted *is* protected. See Santiago, 721 F. Supp. at 393 (listing cases).[3] "Because the [F]irst [A]mendment, the basis for this political discrimination suit, does not limit its protection to any class, the [M]unicipality has rights 'secured by the Constitution and laws' and enforceable under [section] 1983." See id. As such, the principle that a municipality may not sue its state does not bar the Municipality's First Amendment claim. The Municipality's third cause of action, (Docket No. 9 at § IV.C), therefore, survives dismissal.

**Supplemental Jurisdiction**

The defendants argue that "[o]nce [the] claims conferring federal jurisdiction are dismissed from this case . . ., the Court

---

[3] Compare S. Macomb, 790 F.2d at 503-04 (prohibiting municipal corporation from challenging a town's ordinance under the due process and equal protection clauses), with City of New Rochelle, 111 F. Supp. 2d at 357-58 (prohibiting one town from challenging another town's ordinance under the due process and equal protection clauses, but allowing a dormant commerce clause challenge).

should exercise its discretion and dismiss the supplemental state-law claims arising under Puerto Rico law." (Docket No. 11 at p. 14.)  Defendants apparently rely upon 28 U.S.C. § 1367(c)(3), which gives a district court not sitting in diversity the discretion to dismiss a plaintiff's supplemental state claims once it has dismissed *all* federal claims brought by that plaintiff.  See Marrero-Gutierrez v. Molina, 491 F.3d 1, 7 (1st Cir. 2007).  The Court, however, has not dismissed all claims over which it has original jurisdiction:  while the Municipality's federal due process and equal protection claims do not survive dismissal, its federal First Amendment claim remains.  The defendants raise no other argument for dismissal of the supplemental claims.

In addition to its federal constitutional claims, the Municipality alleges political discrimination in violation of the due process and equal protection clauses of the Puerto Rico Constitution.  (Docket No. 9 at § IV.D-E.)  A federal court exercising original jurisdiction may assert supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a); see Ortiz-Bonilla v. Federacion de Ajedrez de Puerto Rico, Inc., 734 F.3d 28, 35 (1st Cir. 2013) ("A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from

the same nucleus of operative facts." (internal quotation marks omitted)). "The district court has considerable authority whether to exercise this power, considering factors such as judicial economy, convenience, fairness to litigants, and comity." Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 191 (1st Cir. 2011). Here, the key facts surrounding the Municipality's state law claims are the same as those underlying its federal constitutional claims. See Docket No. 9 at § IV.D-E. Because the Municipality's supplemental claims are "so related" to its federal First Amendment claim, and because the above delineated factors do not mandate otherwise, the Court will assert supplemental jurisdiction over the Municipality's Puerto Rico law claims.

Having rejected the defendants' only proffered ground for dismissal of the Municipality's Puerto Rico constitutional claims, and having exercised its discretion to assert supplemental jurisdiction over these claims, the Court declines to dismiss the fourth and fifth causes of action. (Docket No. 9 at § IV.D-E.)

**CONCLUSION**

For the reasons discussed above, the defendants' motion to dismiss, (Docket No. 11), is **GRANTED IN PART AND DENIED IN PART.** To the extent the defendants' motion pertains to the Municipality's claims for violations of the due process and equal protection clauses of the federal Constitution, (Docket No. 9 at § IV.A-B), the defendants' motion, (Docket No. 11), is **GRANTED.** The federal

due process and equal protection causes of action are, therefore,
**DISMISSED WITH PREJUDICE.**   To the extent the defendants' motion
pertains to the Municipality's federal First Amendment claim and
its supplemental claims for due process and equal protection
clauses of the Puerto Rico Constitution, (Docket No. 9 at § IV.C-
E), the defendants' motion is **DENIED.**

      **IT IS SO ORDERED.**

San Juan, Puerto Rico, March 6, 2015.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE