IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MUNICIPALITY OF SAN SEBASTIAN,<br><br>**Plaintiff**,<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>**Defendants**. | **Civil No**. 14-1136 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is defendants' motion to reconsider the Court's Opinion and Order, (Docket No. 24), that granted in part and denied in part defendants' motion to dismiss. (Docket No. 32.) For the reasons discussed below, defendants' motion is **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

The Commonwealth of Puerto Rico created the Employment Opportunities Development Fund (the "Law 52 fund") to help combat unemployment in its various municipalities. (Docket No. 9 at ¶ 9.) The Secretary of Labor disburses these funds "in a manner that promotes jobs," allotting greater amounts "to those municipalities with the highest unemployment." Id. Pursuant to this program, the Municipality of San Sebastian (the "Municipality") has typically received an average annual award of $300,000, based on its 17.9%

unemployment rate and population of 42,430.  Id.  Since Governor Alejandro Garcia-Padilla ("Governor Garcia") took office, however, the Municipality has seen a substantial reduction in Law 52 funds.  See id. at ¶ 10.  For the 2013-2014 fiscal year ("FY 2013-14"), Secretary of Labor Vance Thomas ("Secretary Thomas") awarded only $70,000 to the Municipality, id., and for the 2014-15 fiscal year ("FY 2014-15"), only $100,000, (Docket No. 35 at ¶ 10).  The Municipality maintains that political discrimination is motivating the curtailment of its annual award.  See, e.g., Docket No. 9 at ¶ 10.

On February 19, 2014, the Municipality brought this action pursuant to 42 U.S.C. § 1983 against the Commonwealth of Puerto Rico, Governor Garcia in his official capacity, and Secretary Thomas in his official capacity (collectively, "defendants").  (Docket No. 1)[1]  The Municipality contends that Governor Garcia and Secretary Thomas - who are members of the Popular Democratic Party ("PDP")[2] - are lowering the Municipality's Law 52 funds because its

---

[1] The Municipality filed an amended complaint on May 18, 2014. (Docket No. 9.)  After the Court granted partial dismissal of the amended complaint on March 6, 2015, (Docket No. 24), the Municipality filed a second amended complaint on April 7, 2015, (Docket No. 35).  The second amended complaint, (Docket No. 35), was thus filed after the motion for reconsideration, (Docket No. 32).

[2] Secretary Thomas has in the past identified himself as a member of the Puerto Rican Independence Party.  But because he is a member of Governor Padilla's administration, the Court will refer to him as a member of the PDP.

Civil No. 14-1136 (FAB)                                                3

mayor is a member of the New Progressive Party ("NPP"), an opposing political party.  See, e.g., Docket No. 9 at ¶ 10.  According to the Municipality, this political discrimination violates the First Amendment of the United States Constitution as well as the due process and equal protection clauses of both the federal and Commonwealth constitutions.  Id. at § IV.  Among other things, the Municipality seeks declaratory and injunctive relief.  See id. at ¶¶ 29-33.

On June 6, 2014, defendants filed a motion to dismiss the Municipality's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Docket No. 11.)  Defendants argued that the Municipality, as a political subdivision of the state, lacked standing to bring a section 1983 claim.  Id. at p. 3.  On July 7, 2014, the Municipality opposed defendants' motion.  (Docket No. 15.)  On July 22, 2014, the Court referred defendants' motion to dismiss to Magistrate Judge Justo Arenas for a report and recommendation.  (Docket No. 19.)

On August 26, 2014, Judge Areñas recommended that defendants' motion be granted, reasoning that the Municipality is not a proper section 1983 plaintiff.  (Docket No. 21.)  On September 9, 2014, the Municipality objected to the report and recommendation.  (Docket No. 23.)  On March 6, 2015, the Court issued an Order and Opinion adopting in part and rejecting in part the magistrate judge's recommendation.  (Docket No. 24.)  In doing so, the Court

granted defendants' motion as to the Municipality's Fourteenth Amendment claims, but denied the motion as to the Municipality's First Amendment claim and pendent state-law claims. See id.

On April 2, 2015, defendants filed a motion for reconsideration of the Court's Order and Opinion. (Docket No. 32.) In their motion, defendants take no issue with the Court's determination, but assert for the first time an Eleventh Amendment immunity defense. See Docket No. 32-1. On May 13, 2015, the Municipality opposed defendants' motion for reconsideration. (Docket No. 43.) On May 29, 2015, defendants' replied to the opposition. (Docket No. 48.)

## DISCUSSION

Defendants move for reconsideration of the Court's Opinion and Order, which granted in part and denied in part defendants' motion to dismiss. (Docket No. 32.) The Federal Rules of Civil Procedure do not contemplate a "motion for reconsideration." Federal courts generally treat a motion so denominated - which challenges the prior judgment on the merits - as either a motion "to alter or amend a judgment," pursuant to Rule 59(e), or a motion for "relief from judgment," pursuant to Rule 60(b). See, e.g., Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 283 (1st Cir. 1993). Both rules govern final judgements - that is, "order[s] from which an appeal lies." Portugues-Santa v. B. Fernandez Hermanos, Inc., 614 F. Supp. 2d 221, 226 (D.P.R. 2009) (Besosa, J.) (quoting Fed.

R. Civ. P. 54(a)). Because defendants seek reconsideration of the denial of a motion to dismiss, which is not a final judgment, neither rule applies. See Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 4 (1st Cir. 2005) ("Rule 59(e) does not apply to motions for reconsideration of interlocutory orders from which no immediate appeal may be taken.").

A district court, however, "has the inherent power to reconsider its interlocutory orders," Fernandez-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008), which "'remain open to trial court reconsideration' until the entry of judgment," Nieves-Luciano, 397 F.3d at 4 (quoting Geffon v. Micrion Corp., 249 F.3d 29, 38 (1st Cir. 2001)). Defendants' motion - which seeks reconsideration of a non-final order - is thus nothing more than an invocation of the Court's "general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." See, e.g., Wagoner v. Wagoner, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991); Pellicano v. Blue Cross Blue Shield Ass'n, 540 F. App'x 95, 98 n.4 (3d Cir. 2013).

A party moving for reconsideration must typically demonstrate "either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14, 20 (1st Cir. 2013); accord Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014). Defendants' motion does

neither, but instead raises for the first time the defense of Eleventh Amendment immunity. See Docket No. 32-1. A motion for reconsideration is inherently "aimed at *reconsideration*, not initial consideration," F.D.I.C. v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992) (emphasis added), and thus parties should not use them to "raise arguments which could, and should, have been made before judgment issued," Harley-Davidson Motor Co. v. Bank of New England-Old Colony, N.A., 897 F.2d 611, 616 (1st Cir. 1990).

Still, because of its jurisdictional implications, the Eleventh Amendment immunity defense can be raised at any time. Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 33 (1st Cir. 2006); see, e.g., Acevedo Lopez v. Police Dep't of Com. of P.R., 247 F.3d 26, 28 (1st Cir. 2001) (considering defendants' Eleventh Amendment immunity defense asserted for the first time on appeal). Mindful that a ruling on the Eleventh Amendment issue at this stage in the proceedings may help to avoid the burdens of litigation, the Court elects to address defendants' arguments. See Greenbelt Ventures, LLC v. Wash. Metro. Area Trans. Auth., Civ. No. 10-157 (AW), 2011 WL 2175209, at *4 (D. Md. June 2, 2011), aff'd, 481 F. App'x 833 (4th Cir. 2012) (addressing sovereign immunity issue raised for first time in motion for reconsideration); Lansdowne v. Sevenson Envtl. Servs., Inc., Civ. No. 99-3781, 2000 WL 1886578, at *1 (E.D. Pa. Dec. 12, 2000) (granting government's motion for reconsideration in order to address sovereign immunity argument not

previously raised); see also Martinez-Rivera v. Puerto Rico, Civ. No. 11-1184 (GAG), 2011 WL 6011788, at *1 (D.P.R. Dec. 1, 2011) (declining to address Eleventh Amendment immunity defense first raised in motion for reconsideration, but referring issue to magistrate judge for a report and recommendation).

**Eleventh Amendment Immunity**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "Long interpreted as an affirmation of state sovereign immunity," the Amendment, its literal text notwithstanding, also prevents citizens from bringing federal-court actions against their own state. Maysonet-Robles v. Cabrero, 323 F.3d 43, 48 (1st Cir. 2003) (footnote omitted). Generally speaking, the Eleventh Amendment "bars suits in federal courts against unconsenting states," as well as "'official capacity' suits against state hierarchs." Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002).[3] This proscription primarily protects a state's treasury and its dignitary interest of

---

[3] Puerto Rico is considered a "state" for Eleventh Amendment purposes. See Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 21 n.3 (1st Cir. 2001); Ramirez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983) ("Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects.").

Civil No. 14-1136 (FAB)                                                8

not being hailed into federal court.  See <u>Vaqueria Tres Monjitas, Inc. v. Pagan</u>, 748 F.3d 21, 27 (1st Cir. 2014).

The Eleventh Amendment shield, however, is not absolute.[4] Relevant here is the well-recognized exception memorialized in <u>Ex parte Young</u>, 209 U.S. 123 (1908), which "permits suits to proceed against state officers in their official capacities to compel them to comply with federal law," <u>Vaqueria Tres Monjitas, Inc. v. Irizarry</u>, 587 F.3d 464, 478 (1st Cir. 2009).  The purpose of the <u>Ex parte Young</u> exception is "to prevent continuing violations of federal law, . . . not to remedy past violations." <u>Greenless v. Almond</u>, 277 F.3d 601, 607 (1st Cir. 2002).  "Such suits," therefore, "may only seek prospective injunctive or declaratory relief; they may not seek retroactive monetary damages or equitable restitution."  <u>Vaqueria Tres Monjitas</u>, 587 F.3d at 478; <u>accord</u> <u>Ramirez v. P.R. Fire Serv.</u>, 715 F.2d 694, 697 (1st Cir. 1983) ("The distinction between permissible and impermissible relief in such cases turns on which way Lot's wife is facing:  prospective redress is allowable, retrospective redress is not.").  The rationale is that if a federal court were to order compensatory relief against a state official in her official capacity, the monies would be

---

[4] The Eleventh Amendment's "raiment unravels," for example, in cases where: (1) a state randomly consents to suit in a federal forum; (2) a state waives its own immunity; (3) Congress abrogates state immunity; or (4) circumstances permitting, other constitutional imperatives take precedence over the Eleventh Amendment's federal-court bar.  See <u>Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.</u>, 991 F.2d 935, 938 (1st Cir. 1993).

Civil No. 14-1136 (FAB)                                                9

drawn from the state treasury - an outcome at odds with the Eleventh Amendment. See Vaqueria Tres Monjitas, 587 F.3d at 478; cf. Ramirez, 715 F.2d at 697 ("[The Eleventh Amendment] bars federal court lawsuits by private parties insofar as they attempt to impose liabilities necessarily payable from public coffers.").

Because the Municipality brings political discrimination claims against the Commonwealth as well as against Governor Garcia and Secretary Thomas in their official capacities, defendants contend that the Eleventh Amendment is implicated. (Docket No. 32-1.)[5] Specifically, defendants argue that the Municipality seeks a type of injunctive relief that runs afoul to the Eleventh Amendment. See id. at pp. 8-9.

As an initial matter, "[i]n the absence of consent, waiver, or abrogation, the Eleventh Amendment bars suit against states themselves regardless of the form of relief sought." Irizarry-Mora v. Univ. of P.R., 647 F.3d 9, 11 n.1 (1st Cir. 2011); see also Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt., 644 F.3d 5, 11 (1st Cir. 2011) ("'[A] State cannot be sued directly in its own name regardless of the relief sought.'" (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985))). Accordingly, insofar as defendants' motion for reconsideration seeks to excuse the Commonwealth from suit on Eleventh Amendment immunity grounds,

---

[5] Although defendants brief the issue, (Docket No. 32-1 at pp. 6-7), the Municipality concedes that defendants have not waived immunity, (Docket No. 43 at p. 2).

Civil No. 14-1136 (FAB)                                           10

defendants' motion, (Docket No. 32), is **GRANTED**. The claims against the Commonwealth of Puerto Rico are, therefore, **DISMISSED WITH PREJUDICE**.

As for defendants Governor Garcia and Secretary Thomas, who are sued in their official capacities, the availability of Eleventh Amendment immunity turns on the type of relief requested. "While the Eleventh Amendment prohibits a party from bringing suit against a state in federal court, it does not prohibit a party from bringing suit against a state officer in federal court for prospective declaratory or injunctive relief under federal law." Asociacion de Subscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Flores-Galarza, 484 F.3d 1, 24 (1st Cir. 2007) (internal citation omitted). The Ex parte Young exception, in other words, allows "a way around" the Eleventh Amendment prohibition "in cases where prospective declaratory or injunctive relief is sought" against defendants sued in their official capacities. See Mills v. Maine, 118 F.3d 37, 54 (1st Cir. 1997). To determine whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, the court conducts a so-called "straightforward inquiry," asking whether the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur

Civil No. 14-1136 (FAB)                                          11

d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).

Here, the Municipality alleges that despite its high unemployment rate, defendants diminished its Law 52 award for FY 2013-14 from $300,000 to $70,000 solely because of its mayor's political affiliation.  (Docket No. 9 at ¶¶ 9-10.)  According to the second amended complaint, political discrimination continues to taint the Law 52 fund allotment process, as the Municipality's award for FY 2014-15 was $100,000.  (Docket No. 35 at ¶ 10.)  The Municipality avers that its annual awards are inadequate when compared to municipalities whose administration is controlled by the PDP which have lower unemployment rates and smaller populations.  See Docket No. 9 at ¶¶ 9-10; Docket No. 35 at ¶¶ 9-10.[6]  Because the disbursement of Law 52 funds occurs annually, defendants' politically discriminatory practices are an ongoing violation.  See Town of Barnstable v. O'Connor, 786 F.3d 130, 140-41 (1st Cir. 2015) (finding Ex parte Young exception applicable in suit against state agency officials who allegedly violated federal law by forcing electric utility to enter contract with facility

---

[6] As an example, the Municipality points to Rincon, a PDP-led municipality that received $176,998.13 in FY 2013-14 and $194,420 in FY 2014-15.  See Docket No. 9 at ¶ 10; Docket No. 35 at ¶ 10. Despite having a lower unemployment rate (15.7% versus 17.9%) and fewer citizens (15,200 versus 42,430), Rincon is awarded approximately $100,000 more in Law 52 funds each year.  See Docket No. 9 at ¶ 10; Docket No. 35 at ¶ 10.

Civil No. 14-1136 (FAB)                                                  12

developer at a specified price where state agency had an ongoing responsibility under the contract).

To remedy this ongoing violation, the Municipality seeks various forms of declaratory and injunctive relief, including a permanent injunction prohibiting defendants from further acts of political discrimination as well as an order compelling defendants to provide the Municipality its typical Law 52 award of $300,000. (Docket No. 9 at ¶¶ 30-31; Docket No. 35 at ¶¶ 26-27.)  It is unclear whether the Municipality's request for $300,000 in Law 52 funds refers to future annual awards or reimbursement for past inadequate awards,[7] but the latter is impermissible, because the Eleventh Amendment forbids requests for retrospective relief, such as damages or restitution.  See Mills, 118 F.3d at 54.  Suits demanding compensation for past injuries, "such as requests for money that *should have been paid*, do not fall under the Ex Parte Young exception."  Rossborough Mfg. Co. v. Trimble, 301 F.3d 482, 489 (6th Cir. 2002) (emphasis added).

---

[7] That is to say, it is not apparent whether the Municipality seeks to require defendants to pay comparable annual awards in future fiscal years or whether the Municipality seeks to require defendants to pay the difference between its typical award ($300,000) and its awards for FY 2013-14 ($70,000) and FY 2014-15 ($100,000).  See Docket No. 9 at ¶¶ 30-31; Docket No. 35 at ¶¶ 26-27.  The Municipality's opposition seems to indicate that it seeks both.  See Docket No. 43 at ¶¶ 7-8 (requesting injunction for "disbursement of state funds . . . in a prospective sense" and "reimbursement of the Law 52 funds to which it would have been entitled if it were not for the discrimination").

Civil No. 14-1136 (FAB)                                              13

The Eleventh Amendment is, however, "wholly inapplicable" to claims against state officials seeking "nothing other than prospective injunctive relief."  Costa-Ureña v. Segarra, 193 F. App'x 1, 3 (1st Cir. 2006).  The Court thus may issue an injunction "preventing the continued unconstitutional administration of the [Law 52 fund]."  See Rossborough, 301 F.3d at 489.  While such relief might have an "ancillary effect on the state treasury," it would not conflict with the Eleventh Amendment because the injunction would simply require defendants to process the Municipality's future applications for Law 52 funds in a non-discriminatory manner.  See Edelman v. Jordan, 415 U.S. 651; see, e.g., Ramirez, 715 F.2d at 697 (deeming permissible "forward-looking" relief to be an injunction against the sovereign requiring reclassification and reinstatement of employee, despite possible collateral impact on the public fisc).  Thus, to the extent the Municipality seeks to require defendants Governor Garcia and Secretary Thomas to conform their future conduct to federal law, its claims survives the assertion of Eleventh Amendment immunity pursuant to Ex Parte Young.[8]

---

[8] If their reply brief is any indication, defendants apparently construe the Municipality's request to be futuristic in nature, as they raise no arguments against the monetary aspect of the relief sought by the Municipality, and eschew any Eleventh Amendment issue on the matter.  See Docket No. 48 at p. 3 ("Plaintiff is trying to make an issue out of a non-issue: whether there is an ancillary effect (or not) on the state treasury.  This issue, although related, does not go to the heart of what the Defendants argued in our Motion for Reconsideration.").

Civil No. 14-1136 (FAB)                                                    14

In sum, because the Municipality alleges an ongoing constitutional violation for which it seeks prospective redress, the Eleventh Amendment is no obstacle to the claims against defendants Governor Garcia and Secretary Thomas.

Defendants urge the Court to find that defendants are nevertheless shielded from suit, arguing that the Eleventh Amendment bars federal courts from using injunctive power to "compel state officials to comply with state law." (Docket No. 32 at ¶ 5.)  Defendants are correct that the Eleventh Amendment does not allow injunctive relief against state officials for violation of *state law*.  See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) (finding the Ex parte Young exception inapplicable to suits against state officials on the basis of state law); Diaz-Fonseca, 451 F.3d at 43 ("[The Eleventh Amendment] does not allow injunctive relief against state officials for violation of *state law*.").  Defendants' reliance on the Pennhurst caveat, however, is misplaced because the Municipality's cause of action here is clearly based on federal law: 42 U.S.C. § 1983 and the First Amendment to the United States Constitution.  See Docket Nos. 9, 35.  A federal court may enjoin state officials from performing acts which would violate the Constitution and laws of the United States.  See, e.g., Viajes P.R., Inc. v. Martinez-Monge, 711 F. Supp. 674, 676 (D.P.R. 1989) (Cerezo, J.) (finding Pennhurst inapplicable where plaintiff sued defendants

Civil No. 14-1136 (FAB)                                                15

pursuant to section 1983 for failure to implement the Commonwealth's statute and regulation in compliance with the federal Constitution); cf. Town of Barnstable, 786 F.3d at 140 ("The Ex parte Young doctrine's very existence means that a plaintiff *may* frustrate the efforts of a state policy when those efforts violate or imminently threaten to violate the plaintiff's constitutional rights and the plaintiff confines its request to the proper form of relief.").

For these reasons, though it limits the type of relief available to the Municipality, the Eleventh Amendment provides no reprieve from suit for defendants Governor Garcia and Secretary Thomas.  Defendants' motion for reconsideration, (Docket No. 32), is thus **DENIED** with respect to the claims against Governor Garcia and Secretary Thomas in their official-capacities.

## Leave to Amend

In its opposition, the Municipality requests leave to amend the complaint to name defendant Secretary Thomas in his personal capacity in the event the official-capacity claims are dismissed.  (Docket No. 43 at ¶ 16.)  In reply, defendants submit that leave to amend would be futile.  (Docket No. 48 at p. 9.)  In the event leave is granted, defendants advance a qualified immunity defense.  Id. at pp. 6-9.

Federal Rule of Civil Procedure 15(a) permits a litigant to amend her pleading once prior to trial as a matter of course, but

Civil No. 14-1136 (FAB)                                            16

provides that subsequent amendments require either the opposing party's written consent or the court's permission. Fed. R. Civ. P. 15(a)(2). Although leave to amend is to be "freely give[n] . . . when justice so requires," id., "[w]hen a proffered amendment comes too late, would be an exercise in futility, or otherwise would serve no useful purpose, the district court need not allow it," Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 58 (1st Cir. 2006). Here, because the Municipality's claims survive against defendants Governor Garcia and Secretary Thomas in their official capacities, the Court finds that the proffered amendment serves no useful purpose. Accordingly, the Municipality's request for leave to amend, (Docket No. 43 at ¶ 16), is **DENIED**. As Governor Garcia and Secretary Thomas are named only in their official capacities, the Court need not address defendants' qualified immunity defense.

## CONCLUSION

For the reasons discussed above, the defendants' motion for reconsideration, (Docket No. 32), is **GRANTED in part** and **DENIED in part**. To the extent defendants' motion pertains to the Municipality's claims against the Commonwealth of Puerto Rico, the motion is **GRANTED**. The claims against the Commonwealth of Puerto Rico are, therefore, **DISMISSED WITH PREJUDICE**.

To the extent defendants' motion pertains to the claims against Governor Garcia and Secretary Thomas in their official-capacities, the motion is **DENIED**. The Municipality may seek

Civil No. 14-1136 (FAB)                                                      17

prospective injunctive relief against defendants Governor Garcia and Secretary Thomas in their official capacities.

The Municipality's request for leave to amend, (Docket No. 43 at ¶ 16), is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 28, 2015.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE